UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ANGELA GUNN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:16-cv-01668-SEB-MJD |
| | ) | |
| UBER TECHNOLOGIES, INC., | ) | |
| TRAVIS KALANICK, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON MOTION TO COMPEL ARBITRATION**

This matter is before the Court on Defendants' *Motion to Compel Arbitration, Strike Class Allegations and Dismiss the Action*. [Dkt. 19.] The Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion. For the reasons set forth below, Plaintiff's claims against Defendant Uber Technologies, Inc. ("Uber") must be submitted to arbitration; pending arbitration, Plaintiff's claims against Uber are stayed.

I. **Background Facts**

Plaintiff, Angela Gunn, is an Indiana resident who worked as an Uber driver. At the heart of this case is Plaintiff's contention that Uber misclassifies its drivers as independent contractors rather than employees resulting in the violation of wage payment laws. Plaintiff brings this diversity action on behalf of herself and all other similarly situated persons working as drivers in this district for Defendant Uber Technologies, Inc.

Uber is a technology company that offers a smartphone application to connect riders looking for transportation to drivers. Defendant Travis Kalanick is the CEO of Uber. Customers use their smartphones to request rides through the Uber app. The request is routed to the locally-

1

available Uber drivers, who use their own vehicles to pick-up and transport customers. The customer pays through the Uber app and the driver is paid directly by Uber for a portion of the fare collected from the customer.

Prior to using Uber's software to generate leads for riders, potential drivers must enter into the Raiser Software Sublicense & Online Services Agreement (the "Agreement").[1] To enter the Agreement, Plaintiff had to sign into the Uber app and click the appropriate hyperlink. The Agreement is then presented on the screen and can be reviewed in its entirety by scrolling. There is no time limitation to review the Agreement. To advance past the "Agreement" screen, the driver must first click "YES, I AGREE" and then click "CONFIRM." After confirming her acceptance of the Agreement, it is automatically transmitted to Plaintiff's personal Driver Portal, where she could review it or print it at any time.

> The Agreement contains an Arbitration Provision, which provides, in relevant part:
>
> **Except as it otherwise provides, this Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration on an individual basis only and not by way of court or jury trial, or by way of class, collective, or representative action.**
>
> Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision. All such matters shall be decided by an Arbitrator and not by a court or judge.
>
> Except as it otherwise provides, this Arbitration Provision also applies, without limitation, to disputes arising out of or related to this Agreement and disputes arising out of or related to your relationship with [Uber/Raiser], including termination of the relationship.

---

[1] "Raiser" is Raiser LLC, a wholly-owned subsidiary of Uber Technologies.

[Dkt. 20-1 at 25 (emphasis in original).][2]

Once a driver accepts the Agreement, she may still opt out of the Arbitration Provision. The Agreement provides:

> Arbitration is not a mandatory condition of your contractual relationship with the Company. If you do not want to be subject to this Arbitration Provision, you may opt out of this Arbitration Provision by notifying the Company in writing of your desire to opt out of this Arbitration Provision, either by (1) sending, within 30 days of the date this Agreement is executed by you, electronic mail to optout@uber.com, stating your name and intent to opt out of the Arbitration Provision or (2) by sending a letter by U.S. Mail, or by any nationally recognized delivery service (e.g. UPS, Federal Express, etc.) or by hand delivery . . .

[Dkt. 20-1 at 28.]

Plaintiff did not opt out of the Arbitration Provision. Uber now moves to compel the arbitration of Plaintiff's claims.[3]

## II. Discussion

Plaintiff does not dispute that she accepted the Agreement and did not opt out of the Arbitration Provision. Rather, she argues the Federal Arbitration Act does not apply, the Arbitration Provision is void as unconscionable, and that the Agreement's prohibition on collective arbitration is invalid because it violates the National Labor Relations Act ("NLRA"). The Court will address each argument in turn below.

### 1. Federal Arbitration Act

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*., states that, as a matter of federal law, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such

---

[2] Although the Arbitration Provision begins on page 11 of the Agreement, potential drivers are advised of the Provision and their ability to opt-out at the bottom of page one in a paragraph printed in **bold-faced, ALL CAPS**.
[3] Similar cases between Uber and its drivers have been filed in numerous courts across the country. Significantly, every federal district court with the exception of one in the Northern District of California has granted Defendants' motions to compel arbitration. The rogue California district court recently was reversed by the Ninth Circuit in *Mohamed v. Uber Technologies, Inc*., 2016 WL 4651409 (9th Cir. 2016).

3

grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Act further requires courts to stay or dismiss proceedings and to compel arbitration if an issue in controversy is covered by a valid arbitration agreement. 9 U.S.C. §§ 3, 4. To compel arbitration under the FAA, this Court must find (1) that a written arbitration agreement exists between the parties; (2) that there is a dispute among the parties within the scope of the arbitration agreement; and (3) that one of the parties is refusing to comply with the arbitration agreement by declining to participate in arbitration. *See Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 690 (7th Cir. 2005). In interpreting the breadth and viability of an arbitration provision, "as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626 (1985). But, even if an arbitration agreement exists, "[l]ike other contracts, however, [arbitration agreements] may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (internal quotation marks omitted).

The Arbitration Provision at issue here states that it is governed by the FAA. [Dkt. 20-1 at 25.] Yet Plaintiff argues the FAA does not apply because Plaintiff had no "meaningful opportunity to negotiate any terms or conditions of the arbitration clause Defendants have paraded out, which makes the arbitration provisions unconscionable." [Dkt. 26 at 4.] Here, Plaintiff erroneously weaves an unconscionability argument (addressed below with regard to the Arbitration Provision itself) into an argument as to whether the FAA even applies to the Arbitration Provision.

The FAA governs arbitration agreements in contracts affecting interstate commerce. *See Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008). Wilson makes no argument

that the Agreement with Uber does not affect interstate commerce. To the extent Wilson believes otherwise, this argument is now waived. *See Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.") The parties expressly adopted the FAA to govern the Arbitration Provision of their Agreement and Plaintiff "has no way around this language." *Renard v. Ameriprise Financial Services, Inc*., 778 F.3d 563, 566 (7th Cir. 2015). The Court finds that Defendants' motion is properly considered under the FAA.

### 2. Arbitration Provision

Plaintiff next argues the Arbitration Provision itself is unenforceable because the Delegation Clause – the agreement to arbitrate gateway questions such as arbitrability – is invalid. A court should not assume that parties have agreed to arbitrate these threshold issues unless there is "clear and unmistakable" evidence that they have so agreed. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). In the alternative, Plaintiff argues the Arbitration Provision is unconscionable and should not be enforced.

The Delegation Clause at issue in the Agreement provides that "disputes arising out of or relating to interpretation or application of this Arbitration Provision, **including the enforceability, revocability or validity of the Arbitration Provision** or any portion of the Arbitration Provision . . . shall be decided by an Arbitrator and not by a court or judge." [Dkt. 20-1 at 25 (emphasis added).] The Court finds this to be "clear and unmistakable" evidence that Plaintiff agreed to submit challenges to the Arbitration Provision itself to arbitration.

Plaintiff asserts that because the Delegation Clause is "plainly inconsistent" with other provisions of the Agreement that imply disputes will be litigated in court, it is unenforceable. Having found "clear and unmistakable" evidence the parties delegated the question of

5

arbitrability to the arbitrator, this and Plaintiff's remaining arguments concerning the enforceability of the Arbitration Provision must be resolved by the arbitrator.

### 3. National Labor Relations Act

Finally, Plaintiff asserts the Arbitration Provision's prohibition on collective or class arbitration is invalid because it violates Sections 7 and 8 of the National Labor Relations Act ("NLRA"). In support of this proposition, Plaintiff cites *Lewis v. Epic Systems*, wherein the Seventh Circuit held that a class action waiver within an arbitration provision was unenforceable because it interfered with employees' Section 7 right to engage in concerted activity. 823 F.3d 1147 (7th Cir. 2016). In *Lewis*, the employer sent to its employees via email an arbitration agreement mandating that wage and hour claims could only be brought through individual arbitration and that employees waived the right to collective action for such claims. Employees were deemed to have accepted the agreement if they continued working. In other words, employees had no option to decline or "opt-out" of the agreement if they wanted to keep their jobs. *Lewis*, 823 F.3d at 1151.

Plaintiff argues the Court should find the Arbitration Provision in this case to be unenforceable based upon *Lewis*. However, the Seventh Circuit expressly declined in *Lewis* to decide the effect of an opt-out clause, such as the one in this case, on the enforceability of a class action waiver. The Court stated, "[I]n our case, it is undisputed that assent to Epic's arbitration provision was a condition of continued employment. A contract that limits Section 7 rights that is agreed to as a condition of continued employment qualifies as 'interfer[ing] with' or 'restrain[ing] . . . employees in the exercise' of those rights." *Id*. at 1155. Moreover, as noted by the Northern District of Illinois in *Lee v. Uber*, the arbitration provision in *Lewis* did not contain a delegation clause, so the threshold issue of arbitrability was one for the court, rather than the

6

arbitrator. In this case, the parties entered into a valid agreement to delegate to the arbitrator questions of arbitrability. Accordingly, the question of the enforceability of the collective action waiver must be resolved by the arbitrator.

### III. Conclusion

Based on the foregoing, Defendants' *Motion to Compel Arbitration, Strike Class Allegations and Dismiss the Action* [Dkt. 19] is **GRANTED IN PART** and **DENIED IN PART**. The motion to compel individual arbitration is granted and this matter is **STAYED as to Uber only** pending resolution of the arbitration proceeding. The motion to dismiss as to Uber [Dkt. 19] is denied, as the Seventh Circuit has held repeatedly, "the proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings rather than to dismiss outright." *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561 (7th Cir. 2008). The parties are directed to notify the Court within 14 days of the issuance of any arbitration award or other action that terminates the arbitration proceedings. In light of this Order, the motion to strike class allegations contained within Dkt. 19 is **DENIED AS MOOT**

Additionally, on January 17, 2017, Plaintiff filed a surreply to this Motion. [Dkt. 36.] Although this surreply was filed without leave of court, the Court reviewed it and took the arguments into consideration for this Order. Therefore, Defendants' Motion to Strike the surreply [Dkt. 37] is **DENIED AS MOOT**.

Defendants (Uber and Kalanick) filed this Motion jointly; however, Defendants presented no evidence that Kalanick is a party to the Arbitration Agreement and Kalanick previously filed a Motion to Dismiss for Lack of Personal Jurisdiction. [Dkt. 17.] To the extent Defendants believe Plaintiff should be compelled to arbitrate her claims against Kalanick as well, the Court **ORDERS** Defendants **to show cause** on or before **February 3, 2017** as to the basis for such

belief. If Defendants respond to this order to show cause, Plaintiffs shall have seven days following Defendants' response to file a reply.

    SO ORDERED.

Dated: 27 JAN 2017

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record via
email generated by the court's ECF system.